CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
MAR 30 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| HIGHLANDS AMBULANCE SERVICE, | ) ) ) Case No. 1:03CV00052 (Lead Case) |
| Plaintiff, | ) ) |
| | ) **OPINION** |
| v. | ) ) |
| | ) By: James P. Jones |
| UNITED STATES OF AMERICA, ET AL., | ) Chief United States District Judge ) |
| Defendants. | ) |

*Francis H. Casola and Joshua F. P. Long, Esq., Woods Rogers PLC, Roanoke, Virginia, for Plaintiffs; Julie C. Dudley, Assistant United States Attorney, Roanoke, Virginia, for Defendants.*

The plaintiffs in these consolidated cases, who are suppliers of ambulance services to Medicare beneficiaries, filed suit in this court seeking injunctive and mandamus relief directing the Secretary of Health and Human Services (the "Secretary") to provide additional reimbursement. After consideration of the discovery record and relevant case law, I find that the plaintiffs have failed to exhaust their administrative remedies and that this court therefore lacks subject matter jurisdiction. Accordingly, the government's Motion to Dismiss will be granted.

I

The cases arise from a dispute over the Medicare reimbursement rates for ambulance service suppliers. Highlands Ambulance Service and Mercy Ambulance Service filed separate actions on April 17, 2003, alleging that the Department of Health and Human Services ("DHHS") had failed to comply with congressional mandates establishing the effective dates for certain fee schedules. The relief sought includes damages equal to the difference between reimbursement actually received and what the plaintiffs would have received had the new fee schedules been implemented in a timely fashion, transition assistance, and injunctive relief in the form of an order to comply with the above demands. The two separate actions were consolidated by order dated July 21, 2003.

At the defendants' request, this court stayed the present litigation by an order dated November 14, 2003, awaiting resolution of a similar case pending in the Eleventh Circuit. After final resolution of that case, *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1298 (11th Cir. 2004) ("*Lifestar II*"), cert. denied, 543 U.S. 1050 (2005), this court terminated the stay on June 19, 2005. Thereafter, on August 15, 2005, the defendants filed a Motion to Dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. After both parties briefed the issues, oral argument was heard on December 2, 2005. Following the

hearing, I reserved decision on the Motion to Dismiss and entered an order permitting the plaintiffs to conduct limited discovery regarding the availability of the administrative appeals process. Discovery has been conducted, the parties have filed supplemental briefs, and the motion is now ripe for decision.

II

In 1997, Congress adopted the Balanced Budget Act ("BBA"), which mandated the establishment of a national fee schedule for ambulance services to be paid for under Medicare. This schedule was to replace the then-existing "reasonable charge" method of payment, and Congress explicitly stated that the fee schedule "shall apply to services furnished on or after January 1, 2000." Pub. L. No. 105-33, § 4531(b), 111 Stat. 251, 452 (1997) (codified in part at 42 U.S.C.A. § 1395m(l) (West 2003 & Supp. 2005)). Additionally, in 2000, Congress enacted the Medicaid, Medicare and SCHIP Benefit Improvement and Protection Act ("BIPA"), which provided, in relevant part, that certain ambulance suppliers should receive compensation for miles traveled in their home county for services furnished on or after July 1, 2001. Pub. L. No. 106-554, § 423(b)(2), 114 Stat. 2763 (2000) (codified in part at 42 U.S.C.A. § 1395m(1)(2)(E) (West 2003 & Supp. 2005)). Pursuant to the BBA, the Department of Health and Human Services ("DHHS") adopted a fee schedule, but it was not until

February 27, 2002, and it applied only to services furnished on or after April 1, 2002. *See* 67 Fed. Reg. 9,100 (Feb. 27, 2002). The mileage schedule adopted pursuant to the BIPA was likewise only applicable to services furnished on or after April 1, 2002.

The plaintiffs brought the instant suit alleging that the DHHS failed to use the fee schedule mandated by the BBA in making payments to ambulance service providers for services furnished from January 1, 2001, to March 31, 2002, and failed to use the mileage fee schedule mandated by BIPA in making payments from July 1, 2001, to March 31, 2002. As explained above, this court stayed the present litigation awaiting resolution of the *Lifestar II* case, which was before the Eleventh Circuit on appeal at that time.

In *Lifestar*, the plaintiffs sought a writ of mandamus ordering the DHHS to adopt fee schedules complying with the BBA and BIPA and to apply such fee schedules retroactively to services provided after the congressional deadlines. *Lifestar Ambulance Serv., Inc. v. United States*, 211 F.R.D. 688, 692 (M.D. Ga. 2003) ("*Lifestar I*"). The defendants moved to dismiss the case for lack of subject matter jurisdiction on the grounds that the plaintiffs had failed to exhaust their administrative remedies under the Medicare Act. *Id.* The district court held that the mandamus jurisdiction invoked by the plaintiffs in *Lifestar* was available and appropriate, thereby obviating the need for the plaintiffs to exhaust their administrative remedies.

- 4 -

*Id.* at 692-93. The district court denied the defendants motion to dismiss, issued a writ of mandamus ordering implementation of a fee schedule for the relevant time period, and certified a class and subclass of ambulance providers. *Id.* at 702.

On April 16, 2004, the Eleventh Circuit issued its opinion in which it found that the district court did not have mandamus jurisdiction. *Lifestar II*, 365 F.3d at 1298. A prerequisite for mandamus jurisdiction is that the plaintiffs exhaust all other avenues of relief, and the Eleventh Circuit found that Medicare's administrative review process provided the plaintiffs with means to obtain adequate review but that the plaintiffs had failed to take advantage of this process. *Id.* at 1295, 1298. Accordingly, the Eleventh Circuit reversed the district court's denial of the motion to dismiss, vacated the judgment of the district court, and remanded the case with instructions to the district court to dismiss for want of subject matter jurisdiction. *Id.* On February 2, 2005, the district court in *Lifestar* dismissed the case for lack of subject matter jurisdiction and entered judgment in favor of the defendants.

III

After the stay in this litigation was lifted, the defendants filed the present Motion to Dismiss, arguing that (1) the plaintiffs are members of the class certified in *Lifestar I* and are thus barred from pursuing their claims in this court by the

doctrines of res judicata and collateral estoppel and (2) even if res judicata and collateral estoppel did not preclude the plaintiffs from pursuing this action, the court lacks subject matter jurisdiction because the plaintiffs failed to exhaust their available administrative remedies under the Medicare Act. *See* 42 U.S.C.A. §§ 1395ff(b), 1395ii (West 2003 & Supp. 2005). In their initial response, the plaintiffs argued that res judicata and collateral estoppel are inapplicable in this case and that, unlike the plaintiffs in *Lifestar II*, the administrative review process was not truly open and available to them. The plaintiffs' request for discovery to substantiate their claim that the administrative appeals process was foreclosed was granted, and both sides have added to their arguments on this issue in supplemental briefs.

I agree with the defendants that the plaintiffs have failed to exhaust their administrative remedies and that this court thus lacks subject matter jurisdiction to hear this case.[1] *Lifestar II* was based on facts analogous to the instant case, and I find

---

[1] Because I find that this court lacks subject matter jurisdiction over the case, it is unnecessary to address defendants' argument that the plaintiffs are bound by the *Lifestar II* holding that subject matter jurisdiction was lacking in that case. Nonetheless, I find unpersuasive the defendants' argument that the plaintiffs are bound by *Lifestar II* under the doctrines of res judicata and collateral estoppel. The doctrine of res judicata dictates that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Similarly, "[c]ollateral estoppel forecloses 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.'" *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal citation omitted). Identity of parties is a prerequisite to the application of both of

Case 1:03-cv-00052-JPJ-PMS Document 48 Filed 03/30/06 Page 6 of 13 Pageid#: 465

the Eleventh Circuit's opinion persuasive on the issue of whether the plaintiffs have failed to exhaust their administrative remedies. Although the plaintiffs have engaged in discovery hoping to produce evidence to show that this case is distinguishable from *Lifestar II* and that the administrative appeals process was actually foreclosed to them, they have failed in this pursuit.

The plaintiffs in *Lifestar II*, just like the plaintiffs in this case, argued that Medicare's administrative remedies were unavailable to them because the relief

---

these preclusive doctrines, and I disagree with the defendants' contention that the plaintiffs were part of the class certified in *Lifestar I* and that the identity-of-parties requirement is thereby met.

If the class is still in effect and the other requirements of res judicata and collateral estoppel are met, then the plaintiffs would bound because "[g]enerally, all class members are bound by the judgment rendered in an action in which a class is properly certified." *Grisby v. N. Miss. Med. Ctr.*, 586 F.2d 457, 461 (5th Cir. 1978). Because the *Lifestar* class was certified under Rule 23(b)(2), which is "designed to permit only classes with homogenous interests," there was no right to opt out of the class. *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002). However, in *Lifestar II*, the Eleventh Circuit held that the district court was without subject matter jurisdiction and vacated the order of the district court which, among other things, certified the class action. Because the Eleventh Circuit considered only the issue of subject matter jurisdiction and never questioned the validity of the class, it is doubtful that the Eleventh Circuit intended to decertify the class when it vacated the district court's order. Nonetheless, because the district court in *Lifestar* had no subject matter jurisdiction, it was without jurisdiction to certify the class in the first place and it was thereby invalid from the start. See *Breaux v. U.S. Postal Serv.*, 46 F. Supp. 2d 641, 643 (E.D. Tex. 1999) (holding that because the plaintiff could not show exhaustion of administrative remedies the court was "without jurisdiction to entertain [the plaintiff's claim] . . . much less certify a class action"). Accordingly, neither res judicata nor collateral estoppel bind the plaintiffs here to the *Lifestar II* decision.

sought could not be secured in the administrative process. *Lifestar II*, 365 F.3d at 1295. However, "the Medicare statute 'demands the "channeling" of virtually all legal attacks through the [DHHS]' before a health care provider may seek judicial review of a claim arising under the Medicare statute." *Id.* at 1296 (quoting *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000)). Although there is typically an exception to the administrative exhaustion requirement when resort to administrative remedies would be futile or the remedy offered is inadequate, that exception does not apply in the Medicare context because the Medicare statute explicitly mandates exhaustion. *Id.* The Eleventh Circuit thus found that the ultimate issue was whether the plaintiffs' "claim of mandamus jurisdiction accomplishes the nullification of Medicare's exhaustion requirement by permitting plaintiffs to argue that they have no other avenue of relief because resort to administrative remedies is 'futile.'" *Id.* Mandamus jurisdiction is likewise the only way this court can exercise subject matter jurisdiction over the instant case.

Mandamus jurisdiction is only appropriate if (1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief. *Id.* at 1295. In the instant case, just as in *Lifestar*, the plaintiffs cannot invoke the extraordinary remedy of mandamus because they have an alternative avenue of relief under the Medicare Act, which establishes a

- 8 -

Case 1:03-cv-00052-JPJ-PMS   Document 48   Filed 03/30/06   Page 8 of 13   Pageid#: 467

comprehensive remedial scheme that provides administrative hearings for aggrieved providers and judicial review of final decisions. *See Heckler v. Ringer*, 466 U.S. 602, 605-06 (1984) (quoting 42 U.S.C.A. § 405(g) (West 2003 & Supp. 2005)). Even if an administrative hearing officer cannot compel DHHS to issue new fee schedule regulations, "mandamus jurisdiction does not lie merely because resort to the administrative process appears futile." *Id.* at 1297. Indeed, "alleged limitations on the remedial powers of the hearing officers does not render Medicare's administrative remedies a nullity." *Id.*

The plaintiffs argue that the administrative process was not only futile, but foreclosed and unavailable to them when they filed suit in this court. However, the plaintiffs' requested discovery on this issue has revealed no evidence that the appeals process was ever suspended, abrogated, or foreclosed. While the plaintiffs argue that the Centers for Medicare and Medicaid Services ("CMS") instructed its fiscal intermediaries and carriers that "ambulance providers/suppliers may not appeal the fee schedule amounts" or any other issues related to the implementation of the ambulance fee schedule, the documents to which the plaintiffs refer state only that the fee schedule amounts cannot be appealed. (Pls.' Supp. Br. at 3; Pls.' Supp. Ex. C at 243, 9299, 9310.) This prohibition is in accordance with § 1843(l)(5) of the Social Security Act, and simply prohibits suppliers from challenging the calculations under

Case 1:03-cv-00052-JPJ-PMS    Document 48    Filed 03/30/06    Page 9 of 13    Pageid#: 468

the fee schedule itself. *See* 42 U.S.C.A. § 1395m(l)(5) (West 2003 & Supp. 2005); 42 C.F.R. § 414.625 (2005). This limited prohibition does not foreclose appeals challenging the methodology applied or the appropriateness of the payment received and thus does not provide support for the plaintiffs' contention that administrative appeal was foreclosed.

The plaintiffs also point to e-mails sent by CMS contractors shortly after the final dismissal of the *Lifestar* case to support their argument that the administrative appeals process was unavailable. These emails discussed securing CMS guidance on how to advise carriers to proceed with appeals that are based on the timeliness of the fee schedule implementation. (Pls.' Supp. Ex. E at 7528, 7552.) The plaintiffs argue that there would be no need for instructions on how to proceed if the administrative process had been genuinely available for such claims previously. I disagree. It seems entirely reasonable that carriers would seek advice from CMS following the decision in *Lifestar II*, and these communications and other instructions issued by CMS merely demonstrate that CMS was attempting to ensure that carriers would handle post-*Lifestar* appeals in a uniform manner.

Next, the plaintiffs take issue with the documentation defendants require from providers before processing appeals, arguing that such requests are actually intended to thwart the appeals process. However, the Social Security Act provides that

- 10 -

payment may not be made to any provider of services . . . unless "there has been furnished such information as may be necessary in order to determine the amounts due such provider." 42 U.S.C.A. § 1395l(e) (West 2003 & Supp. 2005). In order to effectuate this provision, the Secretary has enacted regulations that impose documentation requirements on all aspects of Medicare reimbursement. The defendants' enforcement of these reasonable regulations does not constitute manipulation of the system and does not demonstrate that administrative appeal was not genuinely available to the plaintiffs in this case.

Lastly, contrary to the plaintiffs' assertion, an administrative proceeding, *Highlander Ambulance*, Docket No. 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 (July 16, 2002), demonstrates that the administrative process was indeed available to providers challenging the timeliness of the fee schedule implementation. In that case, Highlander filed a claim for payment based on the full fee schedule amount that was denied by the carrier. (Pls.' Supp. Ex. D at 9572.) On July 15, 2002, an administrative law judge issued a favorable decision to Highlander, and Highlander was paid. (*Id.*) Subsequently, Highlander filed a second set of related claims, which was denied by the carrier but ultimately resulted in an administrative decision favorable to Highlander. While payment on this set of claims was delayed due to the pending *Lifestar* litigation, CMS provided payment with interest to Highlander on or around February 14, 2005.

- 11 -

Case 1:03-cv-00052-JPJ-PMS   Document 48   Filed 03/30/06   Page 11 of 13   Pageid#: 470

Therefore, despite the plaintiffs contentions to the contrary, it appears that any time after January 1, 2000, when the plaintiffs first submitted claims for services and received payment under the old payment system rather than the new fee schedule, they could have challenged the payment through Medicare's administrative process. Accordingly, I find that mandamus jurisdiction is inappropriate and this case must be dismissed.

The plaintiffs request that this court incorporate into any order dismissing the case a specific finding that the plaintiffs' administrative appeals were tolled during the pendency of this action and should be heard on the merits in the administrative setting. In recognition that many providers had failed to timely file their administrative claims as they awaited the outcome of *Lifestar*, the Secretary has tolled administrative deadlines during the pendency of *Lifestar*, and the plaintiffs here benefitted from this tolling policy.

If available, equitable tolling may further extend the plaintiffs' time to seek administrative review even if their cases are otherwise time-barred. *See Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). It is clear that equitable tolling is extended sparingly so that circumstances of individualized hardship do not supplant the rules of clearly drafted statutes. *Id.* (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) and *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.

2000)). In the event that administrative review is denied by the Secretary in the present case, the plaintiffs will have an opportunity for judicial review of that denial. It would be premature to make a decision on the issue of equitable tolling in advance of the administrative determination.

IV

For the foregoing reasons, these cases will be dismissed for want of subject matter jurisdiction. Appropriate judgments will be entered.

DATED: March 30, 2006

/s/ *signature*
Chief United States District Judge